FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 24, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CAROLYN S.,[1]<br>                    Plaintiff,<br><br>    vs.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>                    Defendant. | No. 1:20-cv-03010-MKD<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 14, and denies Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

1  rational interpretation, [the court] must uphold the ALJ's findings if they are

2  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

3  F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

4  ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

5  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

7  decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

8  *Sanders*, 556 U.S. 396, 409-10 (2009).

9                     **FIVE-STEP EVALUATION PROCESS**

10         A claimant must satisfy two conditions to be considered "disabled" within

11  the meaning of the Social Security Act. First, the claimant must be "unable to

12  engage in any substantial gainful activity by reason of any medically determinable

13  physical or mental impairment which can be expected to result in death or which

14  has lasted or can be expected to last for a continuous period of not less than twelve

15  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

16  impairment must be "of such severity that he is not only unable to do his previous

17  work[,] but cannot, considering his age, education, and work experience, engage in

18  any other kind of substantial gainful work which exists in the national economy."

19  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 7, 2017, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging an amended

disability onset date of February 10, 2016.[2]  Tr. 94, 255-68.  The applications were

denied initially and on reconsideration.  Tr. 176-84; Tr. 186-99.  Plaintiff appeared

---

[2] Plaintiff previously applied for Title II benefits, which was denied on September

29, 2014; Plaintiff did not appeal the denial.  Tr. 86-93.

ORDER - 6

1  before an administrative law judge (ALJ) on October 23, 2018.  Tr. 35-85.  On

2  January 24, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-34.

3       At step one of the sequential evaluation process, the ALJ found Plaintiff,

4  who met the insured status requirements through December 31, 2017, has not

5  engaged in substantial gainful activity since February 10, 2016.  Tr. 17.  At step

6  two, the ALJ found that Plaintiff has the following severe impairments:  cervical

7  spine impairment, carpal tunnel syndrome, bilateral knee impairment, degenerative

8  joint disease of the hip, right ankle impairment, and obesity.  Tr. 18.

9       At step three, the ALJ found Plaintiff does not have an impairment or

10  combination of impairments that meets or medically equals the severity of a listed

11  impairment.  Tr. 22. The ALJ then concluded that Plaintiff has the RFC to perform

12  light work with the following limitations:

13       [Plaintiff] can occasionally balance, stoop, kneel, and crouch.
         [Plaintiff] cannot climb or crawl.  In the upper extremities, [Plaintiff]
14       can frequently reach, handle, and finger.  With the lower extremities,
         [Plaintiff] cannot use foot controls.  [Plaintiff] would need to avoid
15       concentrated exposure to vibration, pulmonary irritants, and hazards.

16  Tr. 23.

17       At step four, the ALJ found Plaintiff is capable of performing her past

18  relevant work as a clerk, records technician, receptionist, childcare provider, and

19  appointment clerk.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a

20

ORDER - 7

disability, as defined in the Social Security Act, from the amended alleged onset date of February 10, 2016, through the date of the decision.  Tr. 29.

On November 13, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ conducted a proper step-two analysis.

ECF No. 14 at 3-21.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 14 at 17-20.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 9

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3    duration, frequency, and intensity of pain or other symptoms; 3) factors that

4    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5    side effects of any medication an individual takes or has taken to alleviate pain or

6    other symptoms; 5) treatment, other than medication, an individual receives or has

7    received for relief of pain or other symptoms; 6) any measures other than treatment

8    an individual uses or has used to relieve pain or other symptoms; and 7) any other

9    factors concerning an individual's functional limitations and restrictions due to

10   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

11   404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

12   an individual's record," to "determine how symptoms limit ability to perform

13   work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14       The ALJ found that Plaintiff's medically determinable impairments could

15   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16   statements concerning the intensity, persistence, and limiting effects of her

17   symptoms were not entirely consistent with the evidence.  Tr. 24.

18       *1.  Gaps in Treatment*

19       The ALJ found Plaintiff's symptom complaints inconsistent with gaps in

20   treatment for her left knee impairment.  Tr. 25.  An unexplained, or inadequately

ORDER - 10

1    explained, failure to seek treatment or follow a prescribed course of treatment may

2    be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*,

3    495 F.3d 625, 638 (9th Cir. 2007).  And evidence of a claimant's self-limitation

4    and lack of motivation to seek treatment are appropriate considerations in

5    determining the credibility of a claimant's subjective symptom reports.  *Osenbrock*

6    *v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F.

7    App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was

8    not seeking treatment).  When there is no evidence suggesting that the failure to

9    seek or participate in treatment is attributable to a mental impairment rather than a

10    personal preference, it is reasonable for the ALJ to conclude that the level or

11    frequency of treatment is inconsistent with the alleged severity of complaints.

12    *Molina*, 674 F.3d at 1113-14.

13        The ALJ noted Plaintiff did not seek orthopedic care for her left knee

14    impairment between 2014 and April 2016.  Tr. 25.  However, Plaintiff's amended

15    alleged onset date is February 10, 2016.  Tr. 15.  As such, the ALJ's analysis

16    primarily considered Plaintiff's lack of treatment in the two years prior to the

17    alleged onset date.  The ALJ also considered Plaintiff's lack of orthopedic

18    treatment between May 2016 and May 2017.  Tr. 25.  Plaintiff was seen for care

19    for her knee, though not by an orthopedist, after falling on her knee in January

20    2017, Tr. 564, during which she was referred again to an orthopedist, Tr. 569.

ORDER - 11

Plaintiff then was seen for orthopedic care for her knee in March 2017, during

which the provider noted Plaintiff had not received symptom relief from a brace,

injections, or medication, and surgery was recommended as Plaintiff was unable to

stand, walk, or drive her car for any length of time due to her left knee pain.  Tr.

406-07.  Plaintiff's lack of treatment for her knee for less than eight months during

the relevant adjudicative period is not a clear and convincing reason to reject

Plaintiff's symptom claims, particularly when Plaintiff required a total knee

arthroplasty when she returned to orthopedic care.  The ALJ also does not point to

any other gaps in treatment for any of Plaintiff's other impairments.  The ALJ's

finding is not supported by substantial evidence in the record; thus it was not a

clear and convincing reasons to reject Plaintiff's symptom complaints.

### 2. Improvement with Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with her

improvement after surgery for her left knee impairment.  Tr. 25.  The effectiveness

of treatment is a relevant factor in determining the severity of a claimant's

symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r*

*of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that

conditions effectively controlled with medication are not disabling for purposes of

determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040

1  (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a

2  claimant's complaints of debilitating pain or other severe limitations).

3       The ALJ noted the medical records did not demonstrate ongoing knee pain

4  or significant functional limitations due to Plaintiff's knee impairment after

5  Plaintiff's surgery.  Tr. 25.  As argued by Plaintiff, the cited records are for

6  appointments when Plaintiff sought treatment for other impairments including her

7  carpal tunnel syndrome and spine impairment.  ECF No. 19 at 18 (citing Tr. 600,

8  611, 616).  Plaintiff continued having stiffness in her knee six months after

9  surgery, Tr. 623, and required pain medications for treatment for her knee

10  impairment almost one year after the operation, Tr. 605-08.  Further, the ALJ does

11  not argue that Plaintiff had improvement in her symptoms after her cervical spine

12  surgery, and acknowledged Plaintiff had continued moderate degenerative disc

13  disease even after her cervical fusion.  Tr. 26 (Tr. 664).  Similarly, the ALJ noted

14  Plaintiff had continued symptoms after her remote ankle surgery, Tr. 25-26 (citing

15  Tr. 513), and Plaintiff received only "some" relief to her carpal tunnel symptoms

16  with treatment, Tr. 26 (Tr. 611).  The ALJ's finding is not supported by substantial

17  evidence in the record; thus, it was not a clear and convincing reasons to reject

18  Plaintiff's symptom complaints

19

20

ORDER - 13

3. *Inconsistent Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence. Tr. 24-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

As the Court finds the only other reasons given by the ALJ to reject Plaintiff's statement were not supported, the ALJ's sole remaining reason of Plaintiff's statements being inconsistent with the objective medical evidence cannot be upheld. *See Burch,* 400 F.3d at 680-81. As such, the ALJ erred in his consideration of Plaintiff's symptom claims. On remand, the ALJ is instructed to reconsider Plaintiff's symptom complaints and incorporate the reported limitations into the RFC or give clear and convincing reasons, supported by substantial evidence, to reject Plaintiff's claims.

## B. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his consideration of the medical opinions of William Drenguis, M.D., Howard Platter, M.D., Norman Staley, M.D., Patrick Metoyer, Ph.D., and John Anderson, Ph.D. ECF No. 14 at 5-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

ORDER - 15

1  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

2  (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

3  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

4  may only reject it by providing specific and legitimate reasons that are supported

5  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-

6  31).  The opinion of a nonexamining physician may serve as substantial evidence if

7  it is supported by other independent evidence in the record.  *Andrews v. Shalala*,

8  53 F.3d 1035, 1041 (9th Cir. 1995).

9      *1. Dr. Metoyer*

10      Dr. Metoyer performed a psychological consultative examination on July 16,

11  2017, and rendered an opinion on Plaintiff's functioning.  Tr. 530-34.  Dr. Metoyer

12  diagnosed Plaintiff with unspecified anxiety disorder.  Tr. 533.  Dr. Metoyer

13  opined Plaintiff's remote memory and ability to interact with coworkers and the

14  public are mildly impaired; her ability to complete a normal workday/workweek is

15  moderately impaired; and her ability to handle the usual stress encountered in the

16  workplace is markedly impaired if it requires persistence with tasks or interactions

17  with others.  Tr. 533.  He further opined Plaintiff is able to reason, understand, and

18  adapt, her recent and immediate memory is intact, concentration/persistence are

19  adequate, and stated Plaintiff reported difficulties completing some tasks and

20  engaging interpersonally.  *Id.*  The ALJ gave Dr. Metoyer's opinion partial weight.

ORDER - 16

Tr. 21.  As Dr. Metoyer's opinion is contradicted by the opinion of Dr. Gilbert, Tr. 106, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Metoyer's opinion.  *See Bayliss,* 427 F.3d at 1216.

The ALJ found Dr. Metoyer's opinion that Plaintiff has marked limitations in adapting to stress was based on Plaintiff's subjective statements.  Tr. 21.  A physician's opinion may also be rejected if it is too heavily based on a claimant's properly discounted complaints.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  As the ALJ erred in his consideration of Plaintiff's symptom complaints, this was not a specific and legitimate reason to reject Dr. Metoyer's opinion.  While the ALJ offered an additional reason to reject Dr. Metoyer's opinion, the Court finds the ALJ's error in the analysis of Dr. Metoyer's opinion is not harmless.  As the case is being remanded to reconsider Plaintiff's symptom complaints, on remand, the ALJ is also instructed to reconsider Dr. Metoyer's opinion and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.

### 2.  Dr. Drenguis

On June 22, 2017, Dr. Drenguis performed a physical consultative examination and rendered an opinion on Plaintiff's functioning.  Tr. 513-18.  Dr. Drenguis diagnosed Plaintiff with left knee pain with left total knee arthroplasty,

1  right knee degenerative joint disease, right ankle posttraumatic degenerative joint

2  disease, left hip internal derangement, mid-back pain, and asthma.  Tr. 517-18.  Dr.

3  Drenguis noted Plaintiff was using a walker at the time of the examination, and the

4  opinion "is based on how she appears on today's examination," but Plaintiff was

5  expected to show improvement in her left knee function with time.  Tr. 518.  Dr.

6  Drenguis opined Plaintiff  could stand and walk at least two hours and sit at least

7  six hours; she needs a walker for postoperative analgesia; she can lift/carry 20

8  pounds occasionally and 10 pounds frequently; she can occasionally climb,

9  balance, stoop, and crouch, and cannot kneel or crawl; she can frequently reach

10  with no limits on handling, fingering, or feeling; and she is limited in working

11  around dust, fumes, and gases.  *Id.*  The ALJ gave Dr. Drenguis' opinion partial

12  weight.  Tr. 27.  As Dr. Drenguis' opinion is contradicted by the opinions of Dr.

13  Platter, Tr. 107-09, and Dr. Staley, Tr. 146-48, the ALJ was required to give

14  specific and legitimate reasons, supported by substantial evidence, to reject Dr.

15  Drenguis' opinion.  *See Bayliss,* 427 F.3d at 1216.

16        The ALJ found Dr. Drenguis' opinion overall was consistent with the

17  evidence but found the opinion that Plaintiff cannot kneel was based on his

18  observations only one month after Plaintiff's knee replacement.  Tr. 27.  An ALJ

19  may discredit physicians' opinions that are unsupported by the record as a whole.

20  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 1195 (9th Cir. 2004).

ORDER - 18

Earlier in the decision, the ALJ noted Plaintiff's medical records demonstrated that after her surgery, she had little to no ongoing knee pain or significant functional limitations, she was doing fairly well with adequately controlled pain, and an MRI of the left knee was largely unremarkable.  Tr. 25 (citing Tr. 492, 526, 545, 589-90, 600, 605, 611, 616, 623, 646, 668-69).  Plaintiff argues she had continued knee pain and limitations due to her knee impairment.  ECF No. 14 at 7-8.  However, as the ALJ noted, any error in rejecting Dr. Drenguis' opinion regarding kneeling would be harmless as Plaintiff's prior work did not require kneeling.  Tr. 27; *see Molina,* 674 F.3d at 1115.

Plaintiff argues the ALJ erred in rejecting Dr. Drenguis' opinion as Dr. Drenguis opined Plaintiff is capable of performing sedentary work and the ALJ found Plaintiff is capable of light work.  ECF No. 14 at 6-7.  Dr. Drenguis opined Plaintiff is capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently and standing/walking "at least" two hours, and did not give any further opinion on her ability to stand and walk.  Tr. 518.  The ALJ found Dr. Drenguis' opinion consistent with light work, interpreting the opinion to mean Plaintiff could stand/walk at least six hours in the day, although it is unclear if that was Dr. Drenguis' intention.  As the case is being remanded for the reasons discussed *supra,* the ALJ is instructed to also reconsider Dr. Drenguis' opinion.  The ALJ is further instructed obtain a physical consultative examination prior to the remand

ORDER - 19

hearing to help determine Plaintiff's limitations after she recovered from her

surgeries, and to call a medical expert to assist with determining Plaintiff's severe

impairments and what limitations are caused by Plaintiff's severe impairments.

### 3.  State agency consultants

On July 27, 2017, Dr. Platter, a State agency medical consultant, rendered

two opinions on Plaintiff's functioning.  Tr. 105-11.  Dr. Platter opined that prior

to February 10, 2016, Plaintiff was capable of lifting 20 pounds occasionally and

10 pounds frequently; standing/walking six hours in a day and sitting six hours in a

day; frequently stooping; occasionally climbing ramps/stairs, balancing, kneeling,

crouching, and crawling; never climbing ladders/ropes/scaffolds; and she should

avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and

hazards.  Tr. 111.  Dr. Platter opined that from February 20, 2016 onward, Plaintiff

is capable of lifting/carrying less than 10 pounds frequently and 10 pounds

occasionally; standing/walking for two hours and sitting for six hours; frequently

stooping; occasionally climbing ramps/stairs, balancing, crouching, and crawling;

never climbing ladders/ropes/scaffolds; and she should avoid concentrated

exposure to extreme cold, heat, wetness, fumes, odors, dusts, gases, poor

ventilation, and hazards. Tr. 108-09.  Dr. Staley, another State agency consultant,

reviewed the evidence at the reconsideration level and gave the same opinion on

1  Plaintiff's functioning.  Tr. 146-50.  The ALJ gave Dr. Platter and Dr. Staley's

2  opinions limited weight.  Tr. 28.

3       On October 13, 2017, Dr. Anderson, a State agency psychological

4  consultant, reviewed Plaintiff's records and rendered an opinion on her

5  functioning.  Tr. 143-44, 150-51.  Dr. Anderson found Plaintiff's anxiety disorder

6  is severe as it causes mild limitations in her ability to understand, remember, or

7  apply information and interact with others, but moderate limitations in

8  concentration, persistence, or maintaining pace and adapting or managing oneself.

9  Tr. 143-44.  He further opined Plaintiff has moderate limitations in her ability to

10  maintain attention/concentration for extended periods, respond appropriately to

11  changes in the work setting, and set realistic goals or make plans independently of

12  others.  Tr. 150-51.  The ALJ gave Dr. Anderson's opinion limited weight.  Tr. 21.

13  As the State agency consultants are nonexamining sources, the ALJ must consider

14  the opinions and whether they are consistent with other independent evidence in

15  the record.  *See* 20 C.F.R. §§ 404.1527(b),(c)(1), 416.927(b),(c)(1); *Tonapetyan,*

16  242 F.3d at 1149; *Lester*, 81 F.3d at 830-31.

17       As the case is being remanded to reconsider Plaintiff's symptom complaints

18  and other medical opinions, the ALJ is instructed to reconsider the medical opinion

19  evidence in its entirety, including the State agency opinions.

20

**C. Step-Two Analysis**

Plaintiff contends the ALJ erred in finding Plaintiff's anxiety is non-severe. ECF No. 14 at 20-21. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish a severe impairment, the claimant must first demonstrate the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1521, 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." SSR 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a

ORDER - 22

routine work setting.  20 C.F.R. § 404.1522(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The ALJ found several of Plaintiff's impairments non-severe, including her anxiety disorder.  Tr. 18-20.  Plaintiff contends the ALJ erred in finding her anxiety disorder non-severe.  ECF No. 14 at 20-21.  As the case is being remanded to reconsider the opinion evidence and Plaintiff's symptom claims, obtain a consultative examination, and take medical expert testimony, the ALJ is instructed to perform the five-step sequential analysis anew, including reconsidering whether Plaintiff's anxiety disorder is a severe impairment at step two.

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 23

Plaintiff has not argued for an award of immediate benefits, and the Court finds further proceedings are necessary to address conflicting evidence and take medical expert testimony.  As such, the case is remanded for proceedings consistent with this Order.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED June 24, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 24